Filed 12/10/14  Flynn v. Vinson CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| STEPHEN FLYNN, | |
| Plaintiff and Respondent, | E058128 |
| v. | (Super.Ct.No. RIC1208403) |
| A. KAY VINSON et al., | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Defendants; | |
| DIANA SERAFIN et al., | [NO CHANGE IN JUDGMENT] |
| Real Parties in Interest and Appellants. | |

THE COURT

The petition for rehearing filed on December 2, 2014, is denied.  On the court's own motion, the opinion filed in this matter on November 18, 2014, is modified as follows:

1.     On page 19, delete footnote No. 9.

1

2. On page 20, replace the last paragraph, which begins "The language from *Perry* that Flynn quotes . . . ," with the following two new paragraphs and a new footnote No. 9:

The language from *Perry* that Flynn quotes cannot be divorced from its proper context—the ability of a ballot initiative proponent to defend the initiative when public officials abandon their duty to do so. The court in *Perry* was only concerned with an initiative proponent's interests in appearing as a party in preelection and postelection challenges, and the court had no occasion to decide whether the proponents were also defending the right of the voters of the State of California to vote on Proposition 8. Although attorney fees under section 1021.5 are not available to a party who only succeeds in enforcing his or her own personal rights, they are available when the party enforces an important right of the public and incidentally enforces his or her own rights. (1 Cal. Attorney Fee Awards, *supra*, Fee-Shifting Statutes, § 3.59, p. 3-57.) Therefore, *Perry* does not control this case.

Nor does this court's decision in *Mission Springs Water Dist. v. Verjil* (2013) 218 Cal.App.4th 892 (*Verjil*) [Fourth Dist., Div. Two]—which Flynn first addressed during oral argument[9]—have any bearing here. There, one issue was whether, for purposes of the SLAPP Act (§ 425.16), a suit against ballot initiative proponents for a declaratory

---

[9] During oral argument, Flynn also relied on an interim order of the Supreme Court issued in an original proceeding still pending before that court. (*Howard Jarvis Taxpayers Assn. v. Bowen* (S220289).) Though reported in the news media, that order was not a published decision and, therefore, may not be cited by any party or relied upon by any court of this State.

2

judgment arose from the proponents' acts in furtherance of their personal rights. (*Verjil*, at p. 902.) This court relied on *Perry* for the proposition "that initiative proponents have a constitutional stake in preelection litigation over their initiative that is distinct from the general public's stake in postenactment litigation over a statute" (*Verjil*, at p. 906) and, therefore, we concluded the proponents satisfied the "arising from" prong for a SLAPP motion (*id*. at pp. 906-908). As in *Perry*, this court had no need to decide whether the initiative proponents were also acting to advance an important public right.

3.      On page 22, replace the first paragraph, which begins "So too here," with the following paragraph:

So too here. Flynn delayed filing his preelection challenge until well into the initiative process and, by that time, the right of the voters to have their say on Measure N was clearly implicated. By successfully opposing Flynn's petition, Serafin enforced that important right of the electors, as well as enforcing their own rights.

These modifications do not change the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER
Acting P. J.

We concur:


KING
J.


3

<u>CODRINGTON</u>          
J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| STEPHEN FLYNN, | |
| Plaintiff and Respondent, | E058128 |
| v. | (Super.Ct.No. RIC1208403) |
| A. KAY VINSON et al., | OPINION |
| Defendants; | |
| DIANA SERAFIN et al., | |
| Real Parties in Interest and Appellants. | |

APPEAL from the Superior Court of Riverside County. Daniel A. Ottolia, Judge.

Affirmed in part; reversed in part with directions.

Lepiscopo & Associates, Peter D. Lepiscopo, William P. Morrow, James M. Griffiths and Michael W. Healy for Real Parties in Interest and Appellants.

1

Bell, McAndrews & Hiltachk, Charles H. Bell, Jr., Thomas W. Hiltachk and Paul T. Gough for Plaintiff and Respondent.

No appearance for Defendants.

INTRODUCTION

Real parties in interest and appellants Diana Serafin and Robin Nielson (collectively Serafin)[1] succeeded in opposing a preelection challenge to Measure N, the Murrieta Prohibition of Automated Traffic Enforcement Systems Act, which was a local ballot initiative they proposed for the removal of red light cameras in the City of Murrieta. Although the superior court initially granted a mandamus petition filed by plaintiff Stephen Flynn against the city clerk and other city and county officials, and ordered Measure N removed from the ballot, Serafin successfully petitioned this court for a writ of mandate directing the trial court to deny Flynn's petition and allow Measure N to remain on the November 6, 2012, ballot. (*Diana Serafin et al. v. Superior Court* (*Flynn*) (Sept. 18, 2013, E056868) [nonpub. opn.] (*Serafin II*).) After we issued our remittitur, Serafin filed a motion seeking attorney fees under the private attorney general doctrine codified in Code of Civil Procedure section 1021.5,[2] and filed memorandums of costs. In postjudgment proceedings, the trial court denied Serafin their fees without prejudice, concluding Serafin's request was premature and they did not

_____

[1] We use "Serafin" for ease of reference with respect to real parties in interest. No disrespect is intended toward Ms. Nielson.

[2] Unless otherwise indicated, all undesignated statutory references are to the Code of Civil Procedure.

show that they were the prevailing party because the validity of Measure N had not yet been litigated in a postelection challenge. The trial court also granted motions to tax costs filed by the city and county defendants, finding Serafin had not prevailed against defendants because they had not opposed or supported Flynn's preelection challenge and had not participated in the writ proceedings in this court.

We have jurisdiction to hear an appeal from a postjudgment order denying attorney fees, so we deny Flynn's request that we dismiss the appeal. On the merits, we conclude Serafin was not required to establish that Measure N survived a postelection challenge before moving for attorney fees. Serafin's main goal in opposing Flynn's preelection challenge was to ensure that the voters of Murrieta had the opportunity to exercise their right to vote on a ballot initiative. Serafin was entirely successful in that endeavor and, in the process, they vindicated an important public right. We also conclude Flynn interfered with the exercise of an important right, and he is the type of party who is liable for attorney fees under section 1021.5. Therefore, we reverse the order denying Serafin's motion for attorney fees and taxing their costs with respect to Flynn, and remand for the trial court to conduct a hearing on the merits of the requests for attorney fees and costs from Flynn. However, because Serafin provides no argument for reversing the court's separate orders taxing costs with respect to the city and county parties, we affirm those orders.

# I.

## FACTS AND PROCEDURAL BACKGROUND

In his petition in the superior court filed on June 5, 2012, Flynn prayed for a writ of mandamus directing defendants (the Murrieta city clerk and city council) to remove Measure N from the ballot for the November 6, 2012, general election and, if necessary, directing defendants (the county board of supervisors and registrar of voters) to not conduct an election on Measure N.[3] The petition named Diana Serafin and Robin Nielson as real parties in interest, and alleged they were the proponents of Measure N who had collected the signatures necessary for placing the initiative on the ballot. According to Flynn, Measure N improperly asked the voters to exercise authority over automated traffic enforcement systems (ATES) that the Legislature squarely addressed to the city council and, even if the electors could adopt an initiative addressing the adoption or removal of an ATES, Measure N was improper because it did not actually adopt an ordinance removing an ATES, but directed the city council to adopt one. Finally, Flynn argued his preelection challenge was the appropriate means of addressing the legality of Measure N, and that the trial court should not exercise discretion to permit the election to go forward and wait for a postelection challenge.

---

[3] The defendants in the superior court mandamus proceeding made no appearances in this appeal.

4

In their opposition, Serafin's main contention was that the trial court should permit Measure N to remain on the November 6, 2012, ballot, and that the validity of the initiative should be tested in a postelection challenge. Serafin also argued the petition should be denied because Flynn did not identify a mandatory or ministerial duty that defendants failed to exercise, for purposes of mandamus relief under Code of Civil Procedure section 1085 or Elections Code section 13314. Serafin's final argument in opposition to the petition addressed the legality of Measure N, but even in that context Serafin continued to argue that the election should go forward and the measure's validity should be tested in a postelection challenge.

After taking the matter under submission, on August 3, 2012, the trial court granted the petition. The court agreed with Flynn that removal of an ATES was not a proper subject for a ballot initiative and, even if it were proper, Measure N did not actually adopt an ordinance to that effect. The court also concluded that a preelection challenge was appropriate, especially when the illegality of the measure was so clearly demonstrated. On August 8, 2012, Serafin filed a petition for writ of mandate in the California Supreme Court and requested an immediate stay of the trial court's order. The same day, the Supreme Court ordered the case transferred to this court (*Serafin v. Superior Court* (*Flynn*) (Aug. 8, 2012, S204561) 2012 Cal. Lexis 7600 (*Serafin I*)). Two days later, we granted a stay. After receiving an opposition from Flynn, we concluded that, although it was not necessarily improper for the trial court to entertain a preelection challenge to Measure N, it was nonetheless unwise under the facts of this case, especially in light of

5

Flynn's substantial delay in filing his petition in the superior court. (*Serafin II*, *supra*, E056868.) We therefore granted Serafin's petition and ordered that a peremptory writ of mandate issue directing the superior court to set aside its order granting Flynn's petition and to enter a different order, and we awarded Serafin their costs. (*Ibid.*) On October 9, 2012, we granted Serafin's motion for early issuance of the remittitur, which the trial court received the next day.

On October 15, 2012, Serafin filed a motion for attorney fees under section 1021.5, and filed a memorandum of costs and a memorandum of costs on appeal. Serafin argued they were entitled to recover attorney fees under the private attorney general doctrine because they were the prevailing party and succeeded in enforcing an important public right, to wit, the right of the electors of Murrieta to vote on Measure N. Serafin sought fees and costs against Flynn and the city and county defendants, jointly and severally, because defendants had refused to defend Measure N and allegedly abdicated their duty to defend the initiative. In the motion and supporting declarations and billing statements, Serafin contended they had incurred $86,895 in reasonable attorney fees opposing Flynn's petition in the superior court, and an additional $42,525 in reasonable attorney fees in the original proceeding filed in the Supreme Court, which was transferred to this court for decision. Serafin also argued they were entitled to a multiplier of their lodestar by a factor of 2 or 3. Finally, Serafin contended they had incurred $1,344.94 in costs in the superior court, and $1,093.15 in costs in the Supreme Court and in this court.

6

The trial court entered an order on October 24, 2012, vacating its prior order granting Flynn's petition. Two days later, the trial court entered a judgment denying Flynn's petition. The judgment left the matter of attorney fees and costs to be determined at a later date.

Flynn opposed the motion for attorney fees, primarily contending (1) he did not interfere with the exercise of a legal right, (2) he was not the type of party who was liable for attorney fees under section 1021.5, (3) Serafin was not a prevailing party because they had not yet established Measure N's validity in a postelection proceeding, and (4) Serefin had not succeeded in enforcing an important public right. Flynn also opposed Serafin's request for attorney fees as unsupported by the evidence and excessive, and argued that a multiplier was unwarranted. The city and county defendants each filed two motions to tax Serafin's costs (including attorney fees) at the trial and appellate levels, primarily contending they did not oppose or support Flynn's petition and, as a result, Serafin cannot be said to have prevailed against them.

At the November 6, 2012, general election, Measure N was approved by 57.26 percent of the Murrieta electors who cast votes.[4]  Before Serafin's request for attorney fees and costs was heard, Flynn filed a notice of related case and requested that the trial court take judicial notice of the petition in *Safe Streets for Murrieta*, *No on Proposition N v. City Council of the City of Murrieta* (Super. Ct. Riverside County, 2012, case No. RIC1217545) (*Safe Streets for Murrieta*), which was filed soon after the election. During the hearing[5] on Serafin's motion for attorney fees and memorandums of costs, the trial court stated its tentative decision that it would deny Serafin their attorney fees because the motion was "not yet ripe" and Serafin had not shown they were a prevailing party, in that the substantive merits of Flynn's challenge to Measure N had not yet been determined in *Safe Streets for Murrieta*.  The court also stated its tentative decision to grant defendants' four motions to tax costs because they had not litigated in the superior court writ proceedings, and they were not parties to the original proceeding filed in the Supreme Court and decided in this court.  The court granted Flynn's request to take judicial notice of the petition filed in *Safe Streets for Murrieta*.

---

[4]  Riverside County election results from the Consolidated Presidential Election, held on November 6, 2012.  (<http://www.election.co.riverside.ca.us/eresults/69/Election%20Result.htm> [as of Nov. 18, 2014].)

[5]  When Serafin filed the notice of appeal, they did not designate any reporter's transcripts to be made part of the record on appeal.  By order dated July 9, 2013, this court granted Serafin's motion to augment the record on appeal with the reporter's transcript of the hearing conducted on December 13, 2012.  (Cal. Rules of Court, rule 8.155(a)(1)(B).)

Serafin argued they were entitled to attorney fees because they were "100 percent" successful in the trial court and in this court by achieving their goal of "protect[ing] the electoral and the initiative process and ensur[ing] that the people of the city of Murrieta would be able to exercise their franchise to vote." Flynn argued he was not liable for attorney fees under section 1021.5 because: (1) the "substantive issues in the case" had not yet been decided, to wit, the legality of Measure N; (2) he was not the type of party liable for such fees in that he "did not engage in any conduct which violated the rights of the other parties"; and (3) Serafin's defense of Measure N in a preelection challenge only resulted in their "enforcing [a] private right at that point in time." After hearing additional argument, the trial court took the motion for attorney fees and the four motions to tax costs under submission.

The trial court subsequently entered orders denying Serafin's motion for attorney fees and granting the city and county defendants' motions to tax costs. In a written ruling, the trial court stated: "The Court finds that, although Real Parties in Interest Serafin and Nielson enforced an important public right by appealing this matter to ensure that the initiative remained on the ballot, the Request for Attorneys Fees is premature because the Courts have not yet ruled on the substantive merit of Petitioner's claim. Hence, Serafin and Nielson cannot be deemed 'successful parties' for purposes of CCP § 1021.5." The court noted that, if Serafin were to successfully defend Measure N in *Safe Streets for Murrieta*, they "would be entitled to attorney fees, which would include fees for work performed on this Petition as well." Finally, the trial court stated that Serafin was not

9

entitled to recover attorney fees and costs from defendants because the city and county "were not parties to the appeal and did not . . . support the writ. Hence, Serafin and Nielson did not prevail against these parties."

Serafin timely filed a notice of appeal from the orders denying the motion for attorney fees and taxing their costs.

Serafin chose not to intervene in *Safe Streets for Murrieta* to defend the substantive merits of Measure N and, in that case, the trial court granted the petition for writ of mandate and entered a judgment preventing the City of Murrieta from enforcing or implementing Measure N.[6] No appeal was filed in that case.

---

[6] The parties filed separate applications requesting that we take judicial notice of various pleadings and documents filed in the superior court in *Safe Streets for Murrieta*, *supra*, case No. RIC1217545. By orders dated May 20 and July 9, 2013, we deferred ruling on those requests. Although we conclude the result in *Safe Streets for Murrieta* is not determinative in this appeal, see *post* pages 16-19, we nonetheless take judicial notice of the reporter's transcript and of the judgment in that case simply for purposes of providing the conclusion to the story of Measure N. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) We deny the remainder of the requests for judicial notice because those documents are not relevant to the issues raised in this appeal. (*Gonzalez v. Department of Corrections & Rehabilitation* (2011) 195 Cal.App.4th 89, 97, fn. 8 [Fourth Dist., Div. Two]; see Cal. Rules of Court, rule 8.252(a)(2)(A).)

II.

DISCUSSION

A.

This Court Has Jurisdiction to Hear an Appeal from a Postjudgment Order

Denying Attorney Fees

As a threshold matter, Flynn contends this court lacks jurisdiction to hear Serafin's appeal and should dismiss it because the order denying Serafin's motion for attorney fees was an interlocutory order or judgment, and hearing this appeal now would run afoul of the one final judgment rule. (§ 904.1, subd. (a)(1).) Serafin responds that the order denying their motion for attorney fees came after the trial court entered a final judgment denying Flynn's petition, and that this court has jurisdiction to hear an appeal from a postjudgment order under section 904.1, subdivision (a)(2). We agree with Serafin. "The right to appeal is conferred by statute. (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5 . . . .) Code of Civil Procedure section 904.1, subdivision (a) lists appealable judgments and orders. These include 'an order made after a judgment made appealable by paragraph (1).' (Code Civ. Proc., § 904.1, subd. (a)(2) (section 904.1(a)(2)).) Under section 904.1(a)(2), postjudgment orders granting or denying motions for attorney fees are deemed to be appealable. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 648 . . .; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) ¶ 2:156, p. 2-72.15 (rev.# 1, 2013).)" (*Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1014-1015.)

11

On October 9, 2012, this court issued its remittitur in *Serafin II*, *supra*, E056868, and the superior court received it the next day. Serafin filed their motion for attorney fees and memorandums of costs on October 15, 2012. On October 24, 2012, the trial court entered an order vacating its prior order granting Flynn's petition. Two days later, the trial court entered a final judgment denying the petition. After taking under submission Serafin's motion for attorney fees and memorandums of costs, on January 10, 2013, the trial court entered its orders denying Serafin's motion for attorney fees and taxing their costs. Serafin timely filed a notice of appeal on February 14, 2013.

The order denying Serafin's motion for attorney fees came *after* the entry of judgment, so Flynn's characterization of that order as a nonappealable interlocutory order or judgment is simply incorrect. Because we have jurisdiction to hear appeals from postjudgment orders denying attorney fees, we deny Flynn's request to dismiss the appeal.

B.

Serafin Was Entitled to Attorney Fees from Flynn Once the Superior Court
Entered Its Judgment in This Case Because They Enforced an Important
Public Right by Successfully Opposing Flynn's Preelection Challenge

Serafin argues the trial court erred by denying the motion for attorney fees under section 1021.5, as premature, because they were completely successful in opposing Flynn's preelection challenge and had enforced an important right of the electors of

12

Murrieta to vote on a ballot initiative.[7]  Serafin contends the trial court incorrectly

interpreted section 1021.5 to require that the proponent of a ballot initiative must show

the initiative was adopted by the electorate, and that the ballot initiative must survive a

postelection challenge before Serafin can move for attorney fees incurred in a preelection

challenge.  Finally, in their reply brief, Serafin argues that an award of attorney fees

against Flynn is appropriate because, by prosecuting a preelection challenge to

Measure N, he interfered with the voters' franchise rights.  We agree and reverse the

order denying Serafin their attorney fees from Flynn.

       i.       *Serafin Was the Successful Party in This Case*

"Section 1021.5 provides, in pertinent part, that '[u]pon motion, a court may award

attorneys' fees to a successful party . . . in any action which has resulted in the

enforcement of an important right affecting the public interest if . . . a significant benefit

. . . has been conferred on the general public . . . .'  Section 1021.5 is one of many

'statutory exceptions' that authorize a trial court to deviate from the generally applicable

'American rule' that each party bears its own costs and attorney fees.  [Citation.]" (*Olson*

*v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147.)  "The

Legislature enacted the provision to codify the private attorney general doctrine

---

**7**  Serafin presents no arguments on appeal for reversing the trial court's orders denying
their attorney fees and costs with respect to the city and county defendants.  It is a
"cardinal rule of appellate review that a judgment or order of the trial court is presumed
correct and prejudicial error must be affirmatively shown." (*Foust v. San Jose*
*Construction Co.*, *Inc.* (2011) 198 Cal.App.4th 181, 187, citing *Denham v. Superior*
*Court* (1970) 2 Cal.3d 557, 564.)  We therefore affirm the orders granting defendants'
motions to tax costs.

previously developed by the courts.  [Citations.]  The doctrine rests on the recognition that privately initiated lawsuits, while often essential to effectuate important public policies, will as a practical matter frequently be infeasible without some mechanism authorizing courts to award fees.  [Citations.]  Accordingly, "'the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.'"  [Citation.]"  (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 250.)

"The terms 'prevailing party' and 'successful party,' as used in section 1021.5, are synonymous.  [Citation.]"  (*McGuigan v. San Diego* (2010) 183 Cal.App.4th 610, 625 (*McGuigan*).)  In order to effectuate the public policy behind the private attorney general doctrine, the courts "have taken a broad, pragmatic view of what constitutes a 'successful party.'"  (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565.)  "'The term "successful party," as ordinarily understood, means the party to litigation that achieves its objectives.'  [Citation.]  '"A lawsuit's ultimate purpose is to achieve actual relief from an opponent. . . .  On this common understanding, if a party reaches the 'sought-after destination,' then the party 'prevails' regardless of the 'route taken.'"'"  (*Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 621 (*Wal-Mart*).)  Recovery of attorney fees under section 1021.5 is not limited to successful plaintiffs or petitioners, and a successful defendant or real party in interest may recover their fees.  (*Id.* at p. 622; 1 Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2014) Fee-Shifting Statutes, § 3.19, p. 3-19.)

"'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' [Citation.] Although 'the decision whether to award attorney fees under section 1021.5 rests initially with the trial court' [citation], the court does not have the discretion to award such fees unless the statutory criteria have been met as a matter of law. Where the material facts are undisputed, and the question is how to apply statutory language to a given factual and procedural context, the reviewing court applies a de novo standard of review to the legal determinations made by the trial court. [Citation.]" (*McGuigan*, *supra*, 183 Cal.App.4th at pp. 622-623.)

The trial court concluded Serafin was not the prevailing party, and their motion for attorney fees was not ripe because the legality of Measure N had not yet been established in a postelection challenge. Although Flynn made this argument in his opposition to the attorney fee motion, he does not repeat it in the brief he filed in this court.[8] We find no support whatsoever in the actual language of section 1021.5 or in the published decions

---

[8] Likewise, Flynn no longer contends Serafin's motion was premature because it was filed before the voters had adopted Measure N. The trial court did not rely on that ground when it denied Serafin's motion, for the obvious reason that the hearing on the motion took place *after* Measure N's passage at the November 6, 2012, election. For the same reasons that we conclude Serafin was not required to obtain a favorable result on the legality of the initiative before moving for attorney fees, we also conclude Serafin was not required to show the measure was actually adopted before moving for attorney fees. (Cf. *Press v. Lucky Stores*, *Inc.* (1983) 34 Cal.3d 311, 316 [ballot initiative proponents were entitled to attorney fees for enforcing their First Amendment right to gather

*[footnote continued on next page]*

15

for the trial court's conclusion that Serafin had to successfully defend Measure N in a postelection challenge before moving for attorney fees.

In *Wal-Mart*, the city of San Marcos, California, approved land use amendments to permit the development of a second Wal-Mart store.  In response, two city residents submitted to the city clerk the necessary signatures for a voter referendum challenging the city's decision and putting approval of the second store to a vote of the electors, and thereafter the city clerk delivered the signatures to the county registrar of voters for verification.  (*Wal-Mart*, *supra*, 132 Cal.App.4th at p. 618.)  Wal-Mart Real Estate Business Trust responded to the proposed referendum by filing suit against the city, the city clerk, and the county registrar of voters, seeking a writ of mandate to prevent or postpone a vote on the referendum based on alleged Elections Code violations.  (*Ibid*.)  The defendants did not oppose the petition, but the proponents of the referendum, who were named as real parties in interest, did.  (*Id*. at pp. 618-619.)  Among other things, the real parties in interest argued "a pre-ballot challenge to a referendum is a disruption of the electoral process the court should not permit absent a compelling showing the substantive provisions of the referendum are invalid . . . ."  (*Id*. at p. 619.)  The trial court agreed, and entered a judgment denying the petition for writ of mandate.  (*Ibid*.)  Sixty-

---

*[footnote continued from previous page]*
*[footnote continued from previous page]*
*[footnote continued from previous page]*
*[footnote continued from previous page]*
signatures in front of a supermarket, notwithstanding subsequent defeat of the ballot initiative by voters].)

one percent of the electors subsequently disapproved of the city's actions, and neither Wal-Mart nor the owner of the property brought a postelection challenge. (*Ibid*.) The real parties in interest then moved for their attorney fees under section 1021.5, contending their opposition to the mandate petition enforced important rights of the general public or a large class of persons. (*Wal-Mart*, *supra*, 132 Cal.App.4th at p. 619.) A different superior court judge heard the motion. The second judge "denied the motion on the ground the judge who denied Wal-Mart's petition for lack of ripeness 'did not make any substantive rulings on this case,' and 'it would be a stretch to then . . . conclude that something that was not adjudicated . . . leads to a significant benefit.'" (*Ibid*.) On appeal, Wal-Mart supported the denial of attorney fees, arguing the real parties in interest "were not 'successful parties' within the meaning of section 1021.5 because in denying Wal-Mart's petition for writ relief 'all . . . they achieved . . . was the [t]rial [c]ourt's acknowledgment . . . that Wal-Mart's suit had come too early, and needed to await the results of the referendum elections.'" (*Wal-Mart*, *supra*, 132 Cal.App.4th at p. 621.) The appellate court disagreed. "In bringing its petition, Wal-Mart sought to keep the referendum off the ballot. In opposing the petition, on ripeness and other grounds, [real parties in interest] sought dismissal of the petition to allow a vote on the City's action to proceed, and that is precisely the relief they obtained." (*Ibid*.) We find *Wal-Mart* persuasive and conclude it is controlling here. As Serafin argued at the hearing on the attorney fee motion, the objectives of their opposition to Flynn's petition, and their objective in petitioning the Supreme Court for a writ of mandate, was

17

"to maintain the integrity of the electoral and initiative processes and to secure and protect the public's constitutional right to vote and power to directly enact laws." Serafin presented a defense to the validity of Measure N in the alternative, but that argument was clearly subordinate to their main contentions that the trial court should permit the election to go forward and, if needed, address the validity of the measure in a postelection challenge.

In our opinion granting Serafin's petition for writ of mandate, we concluded that, while the trial court had the authority to address the legality of Measure N in a preelection challenge, it was unwise to do so in this case because of Flynn's substantial delay in filing his lawsuit. (*Serafin II*, *supra*, E056868.) In light of Serafin's limited objectives in this case and the result that was ultimately obtained—a judgment denying Flynn's preelection challenge and allowing Measure N to go before the voters at the November 6, 2012, election—Serafin clearly meets the definition of a prevailing party. (*Wal-Mart*, *supra*, 132 Cal.App.4th at pp. 621-622.) In short, Serafin was not required to wait until the trial court determined the substantive merits of Flynn's challenge to Measure N before moving for attorney fees.

ii. *Serafin Enforced an Important Public Right*

Flynn argues that, even if Serafin was the prevailing party, they still are not entitled to attorney fees because they only succeeded in enforcing their private, personal rights, and not the important rights of a broader class of persons. We disagree.

18

Flynn relies exclusively on *Perry v. Brown* (2011) 52 Cal.4th 1116 (*Perry*) for the proposition that defense of a ballot initiative in a preelection challenge only implicates the proponent's private rights.[9]  In *Perry*, the California Supreme Court answered a question of state law certified to it by the United States Court of Appeals, Ninth Circuit, to wit, whether the official proponents of a ballot initiative have a recognized interest in the validity of the initiative, such that they may defend the initiative in court when public officials otherwise tasked with defending the initiative decline to do so.  (*Id*. at p. 1124.)  The Ninth Circuit believed—incorrectly it turned out (*Hollingsworth v. Perry* (2013) __ U.S. __, __ [133 S.Ct. 2652, 2662-2663])—that resolution of its certified question was determinative of whether the proponents of Proposition 8 had standing under article III of the United States Constitution to appeal a federal court order declaring Proposition 8 to be unconstitutional.  (*Perry*, at pp. 1132-1133.)

*Perry* had nothing whatsoever to do with attorney fees under section 1021.5, yet in his brief Flynn quotes the following from that decision:  "In the preelection setting, when a proposed initiative measure has not yet been adopted as state law, the official proponents of an initiative measure who intervene or appear as real parties in interest are properly

---

[9]  During oral argument before this court, Flynn addressed problems he perceived in our tentative decision by citing to a published appellate decision and an unpublished order from the California Supreme Court that were not addressed in either of his briefs. Generally, arguments raised for the first time during oral argument are waived. (*Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398, 1408.)  Moreover, if Flynn believed the authority he now cites mandated a modification of our tentative decision, he should have informed this court of that authority before oral argument.  (Cal. Rules of Court, rule 8.254(a).)  Therefore, we decline to address those newly cited authorities.

viewed as asserting their own personal right and interest—under article II, section 8 of the California Constitution and the California statutes relating to initiative proponents—to propose an initiative measure and have the measure submitted to the voters for approval or rejection.  In preelection cases, the official initiative proponents possess a distinct interest in defending the proposed initiative because they are acting to vindicate their own right under the relevant California constitutional and statutory provisions to have their proposed measure—a measure they have submitted to the Attorney General, have circulated for signature, and have the exclusive right to submit to the Secretary of State after signatures have been collected—put to a vote of the people.  Because in the preelection context the initiative measure has not been approved and enacted into law, the state's interest in defending the validity of an enacted state law does not come into play." (*Perry*, *supra*, 52 Cal.4th at pp. 1146-1147, fn. omitted.)

The language from *Perry* that Flynn quotes cannot be divorced from its proper context—the ability of a ballot initiative proponent to defend the initiative when public officials abandon their duty to do so.  The court in *Perry* was only concerned with an initiative proponent's interests in appearing as a party in preelection and postelection challenges, and the court had no occasion to decide whether the voters of the State of California had an interest in voting on Proposition 8.  ""It is axiomatic that cases are not authority for propositions not considered.""" (*McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626.)

There is no doubt that the voters of Murrieta had an interest in the result of this case because at stake was their constitutional right to vote on a ballot initiative. (Cal. Const., art II, §§ 8, subd. (a), 11, subd. (a).) "Voter action by initiative is so fundamental that it is described 'not as a right granted the people, but as a power reserved by them.' [Citation.] 'Declaring it "the duty of the courts to jealously guard the right of the people" [citation], the courts have described the initiative and referendum as articulating "one of the most precious rights of our democratic process" [citation].' [Citation.] Thus, courts are required to liberally construe this power [citation] and accord it 'extraordinarily broad deference.'" (*Native American Sacred Site & Environmental Protection Assn. v. City of San Juan Capistrano* (2004) 120 Cal.App.4th 961, 965-966.)

Again, the decision in *Wal-Mart* is instructive. In that case, the court held that "opposition to Wal-Mart's petition 'resulted in the enforcement of an important right affecting the public interest,' and conferred 'a significant benefit' on a large class of persons within the meaning of section 1021.5." (*Wal-Mart*, *supra*, 132 Cal.App.4th at p. 622.) "The electorate's constitutional right to a referendum vote is . . . an important right under section 1021.5, and [the real parties' in interest] opposition to Wal-Mart's petition to thwart the vote, or at least delay it, protected the rights of thousands of registered voters to proceed in accordance with state law." (*Id*. at p. 623.) So too here. Flynn delayed filing his preelection challenge until well into the initiative process, and by that time the right of the voters to have their say on Measure N was

21

clearly implicated. By successfully opposing Flynn's petition, Serafin enforced that important right of the electors.

        iii.     *Flynn Is the Type of Party Liable for Fees Under Section 1021.5*

Relying on *Adoption of Joshua S.* (2008) 42 Cal.4th 945 (*Joshua S.*), Flynn also contends he is not the type of party who is liable for attorney fees under section 1021.5 because he did not interfere with the exercise of an important right. Once again, we disagree. "In *Joshua S.*, [the California Supreme Court] carved out a limited exception to [the three] qualifications" under section 1021.5, "to be applied in cases where all three factors are satisfied . . . ." (*Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1026, 1027.) "[S]ection 1021.5 was not intended to impose fees on an individual seeking a judgment that determines only his or her private rights, but who has done nothing to adversely affect the public interest other than being on the losing side . . . ." (*Joshua S.*, *supra*, 42 Cal.4th at p. 958.) "This is not to say that a party cannot be held liable for section 1021.5 attorney fees for engaging in litigation. When a party initiates litigation that is determined to be detrimental to the public interest, attorney fees have been imposed. In [*Wal-Mart*], for example, Wal-Mart attacked on technical grounds a referendum that was to decide whether it could locate within the city, and the city was awarded attorney fees after it prevailed in the litigation. Wal-Mart thus sought a *judgment* that would adversely affect the public interest by preventing the city's electorate from exercising its power of referendum. [Citation.]" (*Id.* at p. 957.)

As in *Wal-Mart*, Flynn brought a preelection challenge to Measure N and sought a writ of mandate directing the city to remove the initiative from the ballot. Flynn contends, essentially, that by doing so he was merely protecting the integrity of the ballot initiative process by ferreting out an illegal ballot measure before it could be submitted to the voters in the first place. Had Flynn filed his preelection challenge earlier, his contention may have had merit. But by delaying filing his petition for almost eight months after the city clerk and county registrar of voters certified the sufficiency of the signatures to place Measure N on the ballot, Flynn's lawsuit necessarily implicated and interfered with the right of the voters in Murrieta to vote on the measure. Therefore, we conclude Flynn does not fall within the limited exception recognized in *Joshua S.*, and he is the type of party liable for attorney fees under section 1021.5.

iv.     *Flynn's Additional Arguments*

Finally, Flynn contends that, if we reverse the order denying Serafin's motion for attorney fees, we should make no findings of fact regarding the reasonableness of the attorney fees Serafin seeks, the evidentiary basis for their request, or the appropriateness of a multiplier. With this argument we agree. (See *Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 605 [authority to make findings of fact on appeal under § 909 and Cal. Rules of Court, rule 8.252(b) should be used sparingly and only in exceptional circumstances].) On remand, the trial court shall conduct a hearing and make findings of fact on these additional questions in the first

23

instance.  As necessary, and in the trial court's discretion, the trial court may take additional evidence.

## III.

## DISPOSITION

The order denying Diana Serafin and Robin Nielson's motion for attorney fees against Stephen Flynn is reversed.  The cause is remanded for further proceedings on the amount of reasonable attorney fees and costs, and to determine whether a multiplier of attorney fees is appropriate.  Diana Serafin and Robin Nielson shall also recover from Stephen Flynn their costs incurred in this appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

The orders granting A. Kay Vinson et al.'s motions to tax costs are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____
Acting P. J.

We concur:

KING_____
J.

CODRINGTON_____
J.

24