Filed 9/30/15  Bogan v. Houlemard CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES BOGAN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MICHAEL A. HOULEMARD, JR. et al.,<br><br>    Defendants;<br><br>JASON CAMPBELL,<br><br>    Real Party in Interest and Respondent. | H041246<br>(Monterey County<br>Super. Ct. No. M122980) |

## I.  INTRODUCTION

Real party in interest James Campbell was one of the official proponents of a proposed initiative being circulated among voters for signature and placement on the Monterey County ballot.  Plaintiff James Bogan filed a petition for writ of mandate in the trial court seeking to have the proposed initiative rejected for filing and processing by election officials if and when the initiative was submitted with voters' signatures.  Campbell was the only party who mounted a defense against Bogan's mandate petition, and the trial court ultimately denied the petition.  The initiative appeared on the ballot but was rejected by voters at the November 2013 election.  After a judgment was entered

denying Bogan's mandate petition, Campbell sought attorney's fees and costs from Bogan under Code of Civil Procedure section 1021.5.[1] The trial court granted the motion and awarded Campbell attorney's fees and costs in the amount of $86,909.34.

On appeal from the postjudgment order awarding attorney's fees, we understand Bogan to contend that the trial court's order was insufficient, that the court failed to apply the proper legal standard in determining whether attorney's fees should be awarded under section 1021.5, that Campbell did not meet the statutory criteria for an award of such fees, and that the fee award was otherwise improper given the circumstances of this case.

For reasons that we will explain, we will affirm the order awarding attorney's fees.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Campbell's Proposed Initiative*

Campbell's proposed initiative pertained to Fort Ord, a former military base by Monterey Bay. (*City of Marina v. Board of Trustees of California State University* (2006) 39 Cal.4th 341, 346 (*City of Marina*).) Upon closure of the base, the land was transferred to various governmental entities and local organizations. (*Ibid.*) "To provide a government for the former base and to manage its transition to civilian use, the Legislature enacted the Fort Ord Reuse Authority Act (Gov. Code, § 67650 et seq.)." (*City of Marina*, *supra*, at p. 346.) The act authorized the creation of the Fort Ord Reuse Authority (FORA) and "conferred upon it governmental powers and duties within the former base . . . . FORA's general statutory purpose is 'to plan for, finance, and carry out the transfer and reuse of the base in a cooperative, coordinated, balanced, and decisive manner.' [Citation.]" (*Ibid*.) "The charter for Fort Ord's future use and development is [a] statutorily mandated" reuse plan. (*Ibid*.) "The plan addresses land use, transportation, conservation, recreation and capital improvement in Fort Ord . . . ."

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

(*Ibid.*)  FORA is an election district for purposes of initiative and referendum, and the voters of FORA are the voters of Monterey County.  (Gov. Code, §§ 67655, subd. (a), 67659.)

In April 2013, Campbell and other proponents of the "Protect Fort Ord Open Space Access Initiative" began circulating a petition among voters for signature and placement of the initiative on the ballot.  The stated purpose of the initiative was to "modify and enforce sections of the Fort Ord Reuse Plan . . . to protect essential access points to the recreational areas of Fort Ord and preserve the quality of open space and habitat in . . . sections of the former military base with significant oak woodlands."

Bogan was among the proponents of another initiative petition that was also being circulated among voters.  Bogan's initiative, entitled "California Central Coast Veterans Cemetery, Open Space Preservation and Economic Revitalization Initiative," also sought to amend the Fort Ord reuse plan.

## B. *Bogan's Petition for a Writ of Mandate*

On May 1, 2013, Bogan filed a petition for writ of mandate against the executive officer and alleged district elections official of FORA, Michael A. Houlemard, Jr., and against the Registrar of Voters of Monterey County.[2]  Bogan named Campbell and other official proponents of the "Protect Fort Ord Open Space Access Initiative" as real parties in interest.[3]  In the petition, Bogan alleged that the proponents of the initiative were violating the law by "fail[ing] to include the full text of their initiative . . . in their petition," which was being circulated among voters for signature and placement on the ballot.  Bogan further alleged that the initiative petition contained "false, misleading, confusing, and incomplete materials."  Bogan sought a writ of mandate ordering FORA's

---

[2] Neither Houlemard nor the Registrar of Voters of Monterey County has appeared in this appeal.

[3] The other initiative proponents who were named as real parties in interest are not parties to this appeal.

3

executive officer and the county registrar of voters to reject the initiative for filing and processing, if and when the initiative was submitted with voters' signatures.

At the same time, Bogan also filed an ex parte application for an order shortening time for hearing on the petition. Campbell opposed the application. After a hearing, the trial court denied the application for an order shortening time.

FORA's executive officer, the county registrar of voters, and Campbell each responded to Bogan's mandate petition. None of the individuals who were proponents of the initiative and who were named as real parties in interest in Bogan's mandate petition, other than Campbell, made an appearance in the trial court.

Bogan filed a motion for issuance of a peremptory writ of mandate. Campbell filed written opposition. Campbell contended that a pre-election challenge to an initiative measure is disfavored, that his initiative petition contained the full text of the proposed measure to be enacted by voters, and that no additional text was required. The county registrar of voters filed a "response" to Bogan's motion, but argued only that the county did not have control over whether any particular initiative pertaining to FORA should be placed on the ballot.

### C. *The Trial Court's Order Denying Bogan's Mandate Petition and Judgment*

A hearing was held on the matter in June 2013. The trial court heard argument from Bogan and Campbell about the sufficiency of Campbell's initiative petition. FORA's executive officer took "no position" on the matter, and the county registrar of voters submitted the matter without argument.

The trial court denied Bogan's petition for writ of mandate. In a written order filed in July 2013, the court stated that Campbell's proposed initiative contained the full text of all proposed changes to the Fort Ord reuse plan and was not misleading. The court determined that the proposed initiative contained sufficient information to enable the average voter to intelligently evaluate it, and that the law did not require the proposed initiative to contain additional information. The court further determined that

4

"[i]ncluding additional text beyond the changes proposed by the Initiative could mislead the public regarding the scope of the Initiative," and that "[i]ncluding provisions of the Fort Ord Reuse Plan that are not being changed by the Initiative could have unintended legal consequences if the language is interpreted to be part of the Initiative." A judgment denying the petition for writ of mandate was also filed.

Bogan filed a notice of appeal from the judgment. The appeal was dismissed after Bogan failed to file an opening brief.[4] In the meantime, the initiative proposed by Campbell appeared on the ballot but was rejected by voters at the November 2013 election.

### D. *Campbell's Motion for Attorney's Fees*

Campbell filed a motion for attorney's fees and costs under section 1021.5.[5] Campbell argued that he met the criteria for an award of attorney's fees under the statute because (1) he was the successful party in an action that resulted in the enforcement of an important right affecting the public interest; (2) a significant benefit had been conferred upon the general public or a large class of persons; and (3) the necessity and financial burden of private enforcement made an award of attorney's fees appropriate.

In support of his argument, Campbell asserted that he was the successful party in the action because he was the only party to defend the initiative petition, and he fully prevailed. He also contended that his defense of the initiative petition enforced the right

---

[4] On our own motion, we take judicial notice of Bogan's notice of appeal and this court's order of dismissal in *Bogan v. Houlemard et al.* (H040216). (Evid. Code, § 452, subd. (d)(1).)

[5] Section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

to initiative, which is an important right of the democratic process. Campbell observed that, as a result of his defense of the initiative petition, the signatures on the petition were submitted for verification and the measure qualified for the ballot for a vote in the November 5, 2013 election. Campbell argued that his defense thus benefitted the initiative's supporters as well as county voters who were able to vote on an initiative concerning a matter of "significant local concern." He also argued that an award of attorney's fees was appropriate because no public entity defended the initiative petition, and he had no financial interest in the outcome of the litigation.

Campbell initially requested more than $51,000 for attorney's fees and out-of-pocket expenses, plus an additional amount for attorney's fees incurred in preparation of a reply brief. Campbell provided declarations from counsel in support of the request.

### E. *Bogan's Opposition to the Motion for Attorney's Fees*

In opposition to the attorney's fees motion, Bogan contended, among other arguments, that Campbell did not satisfy the statutory criteria for an award of private attorney general's fees under section 1021.5. According to Bogan, Campbell failed to establish that he was a successful or prevailing party, and his voluntary participation in the litigation did not justify a fee award. Bogan further argued that Campbell participated in the action to protect his own individual interests and concerns, including his membership in a political organization called "Keep Fort Ord Wild," rather than to benefit the public. Bogan also observed that Campbell's initiative was rejected by voters in the November 2013 election. Bogan contended that Campbell's defense of the initiative did not therefore confer any benefit on the voters and residents in the county, or on the public and its use and enjoyment of the former Fort Ord site. Bogan also argued that Campbell failed to demonstrate that he actually had to pay any attorney's fees or was otherwise subjected to any financial burden in connection with the litigation. Bogan further contended that even if Campbell satisfied the statutory requirements for a fee award, the court should exercise its discretion and deny fees because of the "unique and

6

exceptional facts" in the case, including that Bogan was retired, living on a fixed income, and had brought the action in an attempt to "better educate the public as to the details of . . . Campbell's ballot initiative."

Subsequent to the filing of Bogan's opposition to the attorney's fees motion, Campbell and Bogan stipulated that Bogan's "personal status and financial condition [were] not relevant factors for the Court's consideration in determining the propriety or amount of any fee award under Code of Civil Procedure section 1021.5." Campbell consequently agreed in the stipulation "not to attempt to engage in any discovery from [Bogan] . . . in connection with [Campbell's] motion for attorneys' fees on the above factors."

In a reply in support of his attorney's fee motion, Campbell continued to assert that he was entitled to fees under section 1021.5. He also sought additional attorney's fees incurred since the filing of the motion, including for time spent by counsel engaging in "protracted negotiations" with Bogan regarding discovery and factual claims made by Bogan in his opposition to the fee motion. In total, Campbell sought $86,909.34 in attorney's fees and expenses.

### F. *The May 2014 Order Awarding Attorney's Fees*

A hearing was held on Campbell's motion for attorney's fees and costs in April 2014. After hearing argument, the trial court granted the motion The court stated that Campbell had "met" the "requirements" for fees. The court indicated that the "benefit to the public" was the "right to engage in this initiative process, the right to put these matters on the ballot." The court found that Campbell had defended the "right to petition, to put the initiative on the ballot, and to be able to proceed forward with that."

In a written order filed on May 2, 2014, the trial court stated that Campbell was a "prevailing party" and had "satisfie[d] the criteria for an award of fees under Code of Civil Procedure[] section 1021.5, in that [his] defense of the right to petition for a change in law by initiative enforced important public rights and conferred a significant benefit on

7

the general public in Monterey County.  The necessity and financial burden of the private enforcement of the right to initiative ma[d]e an award of attorneys' fees and costs appropr[]iate."  The court further found that the hours and rates claimed by Campbell were reasonable and appropriate.  The court awarded attorney's fees and costs in the amount of $86,909.34 as requested.

## III.  DISCUSSION

### A.  *Sufficiency of the Trial Court's Order*

Bogan first contends that the trial court erred by "failing to make sufficient findings in support of the fee award, and by failing to cite, consider or rely on any evidence to support and justify the fee award."  Bogan further contends that the court "automatically award[ed]" attorney's fees to Campbell as the prevailing party in a case involving election materials, without considering whether Campbell had satisfied the requirements for an award under section 1021.5.

Section 1021.5 states that "a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement. . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

A trial court is not required to issue a statement of decision regarding an attorney's fee award or to otherwise explain its decision in awarding attorney's fees.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140 (*Ketchum*); *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1294; *In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 589 [trial court "not required to explain its rationale" for an attorney's fee award]; *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101 (*Gorman*) ["there is no general rule requiring trial courts to explain their decisions on motions seeking attorney fees"]; see *id.* at p. 67.)

8

Further, on appeal " ' "[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]" (*Ketchum*, *supra*, at p. 1140.) As a general rule, and in the absence of evidence to the contrary, "we presume that the trial court has properly followed established law. [Citations.]" (*People v. Diaz* (1992) 3 Cal.4th 495, 567; accord, *Gorman*, *supra*, at p. 67; *Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158 (*Mejia*).) Thus, "[t]he absence of an explanation of a ruling may make it more difficult for an appellate court to uphold it as reasonable, but we will not presume error based on such an omission." (*Gorman*, *supra*, at p. 67; see *RiverWatch v. County of San Diego Dept. of Environmental Health* (2009) 175 Cal.App.4th 768, 776 [trial court's ruling will not be disturbed "absent a showing that there is no reasonable basis in the record for the award"].)

At the hearing on Campbell's motion for attorney's fees, the trial court stated that Campbell had "met" the "requirements" for fees. The court indicated that the "benefit to the public" was the "right to engage in this initiative process, the right to put these matters on the ballot." The court found that Campbell had defended the "right to petition, to put the initiative on the ballot, and to be able to proceed forward with that." In its subsequent written order, the court stated that Campbell had "satisfie[d] the criteria for an award of fees under Code of Civil Procedure[] section 1021.5, in that [his] defense of the right to petition for a change in law by initiative enforced important public rights and conferred a significant benefit on the general public in Monterey County. The necessity and financial burden of the private enforcement of the right to initiative ma[d]e an award of attorneys' fees and costs appropr[]iate."

Based on the record, it is apparent that the trial court considered the requirements of section 1021.5 in its determination that Campbell was entitled to an award of attorney's fees. The court was not required to provide a more detailed explanation of the basis for its ruling. Bogan fails to cite to anything in the record, including the trial

9

court's statements during the hearing on the attorney's fees motion or the court's subsequent written order, that persuades us that the court "automatically award[ed]" attorney's fees without considering whether the requirements for an award under section 1021.5 had been satisfied. We therefore turn to the issue of whether the court correctly determined that Campbell satisfied the requirements of section 1021.5 and was entitled to attorney's fees under the statute.

**B.** *General Legal Principles Regarding Attorney's Fees under Section 1021.5*

"[S]ection 1021.5 is an exception to the general rule in California, commonly referred to as the American rule . . . , that each party to a lawsuit must ordinarily pay his or her own attorney fees. [Citation.]" (*Adoption of Joshua S.* (2008) 42 Cal.4th 945, 954 (*Joshua S.*).) "A court may award attorney fees under section 1021.5 only if the statute's requirements are satisfied." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 250 (*Vasquez*).) Section 1021.5 authorizes an award attorney's fees to a "successful party against one or more opposing parties" if (1) the action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons," and (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate . . . ." (§ 1021.5; see *Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1026; *Vasquez, supra*, at p. 251.)

"Section 1021.5 codifies the courts' 'traditional equitable discretion' concerning attorney fees [citation], and within the statutory parameters courts retain considerable discretion. '[T]he Legislature has assigned responsibility for awarding fees under section 1021.5 "not to automatons . . . , but to judges expected and instructed to exercise 'discretion.' " ' [Citations.] In deciding whether to award fees, the court 'must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory.' [Citation.] A reviewing court 'will uphold the

10

trial court's decision to award attorney fees under section 1021.5, unless the court has abused its discretion.' [Citation.]" (*Vasquez*, *supra*, 45 Cal.4th at p. 251.)

" '[T]he Legislature adopted section 1021.5 as a codification of the "private attorney general" attorney fee doctrine that had been developed in numerous prior judicial decisions. . . . [T]he fundamental objective of the private attorney general doctrine of attorney fees is " 'to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens.' " [Citations.] The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.' [Citation.]" (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1217-1218 (*Whitley*), italics omitted.)

Although the California Supreme Court has generally described the private attorney general attorney fee doctrine, as codified in section 1021.5, in terms of encouraging the initiation of certain types of lawsuits (see e.g., *Whitley*, supra, 50 Cal.4th at pp. 1217-1218), section 1021.5 does not expressly restrict an award of attorney's fees to only plaintiffs. Rather, section 1021.5 authorizes an award of attorney's fees to a "successful party against one or more opposing parties." This section "draws no distinctions between plaintiffs and defendants as a 'successful party.' [Citations.]" (*Hull v. Rossi* (1993) 13 Cal.App.4th 1763, 1768 (*Hull*).) Further, "a real party in interest in a mandamus proceeding also is regarded as a party to the litigation" (*Mejia*, *supra*, 156 Cal.App.4th at p. 160), and a real party in interest may be entitled to attorney's fees under section 1021.5 (*Hull*, *supra*, at p. 1765; *Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 617, 622 (*Wal-Mart*)).

11

"The decision as to whether an award of attorney fees is warranted rests initially with the trial court." (*Baggett v. Gates* (1982) 32 Cal.3d 128, 142; accord, *Mejia*, *supra*, 156 Cal.App.4th at p. 158.) Generally, "[w]e will uphold the trial court's decision to award attorney fees under section 1021.5, unless the court has abused its discretion. [Citation.]" (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 578.) "[D]iscretion may not be exercised whimsically, and reversal is required where there is no reasonable basis for the ruling or when the trial court has applied the wrong test to determine if the statutory requirements were satisfied. [Citations.]" (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 634.) " ' "If the trial court has made no findings, the reviewing court will infer all findings necessary to support the judgment and then examine the record to see if the findings are based on substantial evidence." ' [Citations.]" (*Bui v. Nguyen* (2014) 230 Cal.App.4th 1357, 1368.) De novo review is warranted, however, when " ' "the determination of whether the criteria for an award of attorney fees and costs . . . have been satisfied amounts to statutory construction and a question of law." ' [Citation.]" (*Whitley*, *supra*, 50 Cal.4th at p. 1213.)

With these general legal principles in mind, we turn to the issue of whether attorney's fees were authorized under section 1021.5 for Campbell's successful opposition to Bogan's petition for writ of mandate, which sought the rejection of Campbell's initiative for filing and processing by election officials

**C. *Wal-Mart Real Estate Business Trust v. City Council of San Marcos (2005) 132 Cal.App.4th 614***

In determining whether, under section 1021.5, Campbell's opposition to Bogan's mandate petition (1) enforced an important right affecting the public interest, (2) conferred a significant benefit on the general public or a large class of persons, and (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate," we find *Wal-Mart* instructive because it involved a similar set of facts.

12

In *Wal-Mart*, a city decided to allow Wal-Mart to build a store in the city. (*Wal-Mart*, *supra*, 132 Cal.App.4th at p. 618.) Two residents submitted a referendum petition with signatures to the city, challenging the city's action and seeking to put the matter to a vote. (*Ibid.*)

Wal-Mart filed a petition for writ of mandate against the city and others, including the two proponents of the referendum as real parties in interest. (*Wal-Mart*, *supra*, 132 Cal.App.4th at p. 618.) In a subsequent motion for issuance of the writ of mandate, Wal-Mart sought to invalidate the referendum petition on the grounds that the referendum petition "violated the Elections Code by not including the full text of the City's various documents implementing the land use change," some signatures were obtained by people not registered to vote, and the city's actions were not subject to referendum. (*Ibid.*) The city did not oppose the petition or motion, but filed a response in which they sought "guidance" on the proper verification of petition signatures. (*Ibid.*)

The proponents of the referendum opposed Wal-Mart's petition and motion. They argued that a pre-ballot challenge to a referendum was disruptive of the electoral process, and that Wal-Mart's challenge should not be permitted because there was no compelling showing that the substantive provisions of the referendum were invalid. The trial court agreed that it was more appropriate to review challenges to the measure after an election, absent a clear showing of invalidity. The trial court accordingly denied Wal-Mart's motion and dismissed its petition without prejudice. At the subsequent election, city voters approved the referendum. (*Wal-Mart*, *supra*, 132 Cal.App.4th at p. 619.)

The referendum proponents sought attorney's fees under section 1021.5, but the trial court denied the motion. (*Wal-Mart*, *supra*, 132 Cal.App.4th at p. 619.) The appellate court reversed. The appellate court first determined that the referendum proponents, who were real parties in interest, were "successful" parties within the meaning of section 1021.5. The appellate court observed that Wal-Mart in bringing its petition "sought to keep the referendum off the ballot," while the proponents "sought

13

dismissal of the petition to allow a vote on the City's action to proceed, and that is precisely the relief they obtained." (*Wal-Mart*, *supra*, at p. 621.)

The appellate court also determined that the referendum proponents' conduct " 'resulted in the enforcement of an important right affecting the public interest' " and conferred " 'a significant benefit' " on a large class of persons within the meaning of section 1021.5. (*Wal-Mart*, *supra*, 132 Cal.App.4th at p. 622.) The appellate court observed that "the 'state constitutional right of initiative or referendum is "one of the most precious rights of our democratic process." [Citation.] These powers are reserved to the people, not granted to them. Thus, it is our duty to " ' "jealously guard" ' " these powers and construe the relevant constitutional provisions liberally in favor of the people's right to exercise the powers of initiative and referendum.' [Citation.]" (*Id.* at pp. 622-623; accord, *Senate of the State of Cal. v. Jones* (1999) 21 Cal.4th 1142, 1168.) The appellate court determined that "[t]he electorate's constitutional right to a referendum vote is . . . an important right under section 1021.5, and [the referendum proponents'] opposition to Wal-Mart's petition to thwart the vote, or at least delay it, protected the rights of thousands of registered voters to proceed in accordance with state law." (*Wal-Mart*, *supra*, at p. 623; see *Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1517 [recognizing importance of referendum power and associated rights in determining that petitioners were entitled to section 1021.5 fees]; *Joshua S.*, *supra*, 42 Cal.4th at p. 957, fn. 4 [noting that "election law litigation inherently implicates public rights"].) The appellate court further determined that private enforcement of the referendum power by the proponents of the referendum was a necessity within the meaning of section 1021.5, because the city did not oppose Wal-Mart's petition and the trial court relied on the referendum proponents' arguments in ruling against Wal-Mart. (*Wal-Mart*, *supra*, at pp. 623-624.)

14

**D.** *Application of Section 1021.5 in This Case*

In this case, Bogan in his petition and motion for writ of mandate sought to have Campbell's initiative "reject[ed] . . . for filing and processing" by election officials, and to ultimately prevent the initiative from "appear[ing] in the Monterey County voter information pamphlet and on the Monterey County ballot." Bogan contended that the initiative petition did not include the full text of the initiative as required by law, and that the petition contained false, misleading, confusing, and incomplete materials. In opposition, Campbell contended that no additional text was required in the initiative petition, and that Bogan's motion for writ of mandate should be denied so that the initiative could be included on the ballot if it qualified. The trial court determined that the law did not require the initiative to contain additional information and that it was not misleading. The court concluded that "the requested writ of mandate will not issue, so that the signatures on the petition may be verified and the measure placed on the ballot if it so qualifies."

The measure proposed by Campbell involved the " ' "precious" ' " constitutional right of initiative. (*Wal-Mart*, *supra*, 132 Cal.App.4th at p. 622.) Similar to *Wal-Mart*, Bogan's petition for writ of mandate sought to keep the measure "off the ballot," while Campbell sought "to allow a vote" and "that is precisely the relief [Campbell] obtained." (*Id.* at p. 621.) Campbell's opposition to Bogan's "petition to thwart the vote, or at least delay it," thus "protected the rights of [a large class] of registered voters to proceed in accordance with state law." (*Id.* at p. 623.) Accordingly, Campbell's defense of the initiative "resulted in the enforcement of an important right affecting the public interest" and conferred "a significant benefit" on a large class of persons within the meaning of section 1021.5. (See *Wal-Mart*, *supra*, at p. 622.) Further, the trial court's denial of Bogan's petition and motion was based on arguments raised only by Campbell, and attorney's fees were incurred in Campbell's defense. Thus, "the necessity and financial

15

burden of private enforcement" were "such as to make the award [of attorney's fees] appropriate. " (§ 1021.5.)

Bogan contends that the trial court erred in awarding attorney's fees against him, including on the ground that *Wal-Mart* is distinguishable. We are not persuaded by Bogan's arguments.

First, Bogan suggests that a defendant or real party in interest may not be awarded attorney's fees against an individual plaintiff under section 1021.5. As we have explained, section 1021.5 does not distinguish between plaintiffs and defendants, and real parties in interest may be entitled to attorney's fees under that section. (*Hull*, *supra*, 13 Cal.App.4th at p. 1768; *Wal-Mart*, *supra*, 132 Cal.App.4th at pp. 617, 622.) Further, it is an "incontrovertible proposition that section 1021.5 fees may be sought in the appropriate case not only against governmental entities and corporations but also against private individuals. (See, e.g., *Planned Parenthood v. Aakhus*[ (1993) ]14 Cal.App.4th 162 [antiabortion protestors violating privacy rights of clinic patrons assessed § 1021.5 fees].)" (*Joshua S.*, *supra*, 42 Cal.4th at p. 958.)

Second, Bogan contends that Campbell's defense did not involve "the enforcement of an important right affecting the public interest." (§ 1021.5.) According to Bogan, he sought to challenge the proposed initiative early during the signature-gathering process rather than after the petition had been submitted to the registrar of voters for signature verification as in *Wal-Mart* (see *Wal-Mart*, *supra*, 132 Cal.App.4th at p. 618), and therefore he cannot be deemed to have been seeking to "thwart the vote" (*id.* at p. 623) or otherwise infringing the right of voters.

In his mandate petition, however, Bogan sought a writ of mandate ordering Campbell's initiative "reject[ed] . . . for filing and processing, if and when it [was] submitted with voters' signatures." According to the mandate petition, Bogan sought the writ to avoid "irreparable harm" from occurring "in that [Campbell's] . . . initiative, if found to have a sufficient number of valid signatures, will appear in the Monterey County

16

voter information pamphlet and on the Monterey County ballot." Thus, regardless of *when* Bogan filed his mandate petition, it is apparent that his mandate petition sought to prevent Campbell's proposed initiative, in the form that was then being circulated for signature, from appearing on the ballot. Under the circumstances, Bogan's mandate petition could reasonably be construed as a "petition to thwart the vote, or at least delay it" (*Wal-Mart*, *supra*, 132 Cal.App.4th at p. 623), and otherwise "adversely affect[ing] the public interest by preventing the [county's] electorate from exercising its power of [initiative]" (*Joshua S.*, *supra*, 42 Cal.4th at p. 957).

Third, we disagree with Bogan's contention that Campbell's defense "only benefitted himself, and presumably his small group of supporters," rather than "the general public or a large class of persons" as required by section 1021.5. If Bogan's mandate petition had been successful, Campbell's initiative would not have been placed on the ballot. Campbell's defense of the initiative thus prevented Bogan from "thwart[ing]" a vote on the initiative by Monterey County voters (*Wal-Mart*, *supra*, 132 Cal.App.4th at p. 623), "protected the rights of [a large class] of registered voters to proceed in accordance with state law" (*ibid.*), and otherwise prevented Bogan from "adversely affect[ing] the public interest by preventing the [county's] electorate from exercising its power of [initiative]" (*Joshua S.*, *supra*, 42 Cal.4th at p. 957).

Fourth, Bogan asserts that Campbell failed to demonstrate that "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate." (§ 1021.5.) In particular, Bogan contends that there is no evidence Campbell had to pay attorney's fees to defend the initiative, and that his motive in pursuing the defense was to benefit his own personal interests rather than the interests of the public.

"[T]he necessity and financial burden requirement ' "really examines two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." ' [Citations.] The 'necessity' of private enforcement ' " ' "looks to the adequacy of public enforcement and

17

seeks economic equalization of representation in cases where private enforcement is necessary." ' [Citations.]" ' [Citation.]" (*Whitley*, *supra*, 50 Cal.4th at pp. 1214-1215.)

Relevant here, "[t]he second prong of the inquiry addresses the 'financial burden of private enforcement.' In determining the financial burden on litigants, courts have quite logically focused not only on the costs of the litigation but also any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield. ' "An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' [Citation.]" ' [Citation.] 'This requirement focuses on the financial burdens and incentives involved in bringing the lawsuit.' [Citation.]" (*Whitley*, *supra*, 50 Cal.4th at p. 1215.) In weighing the financial burdens and incentives involved in litigating the suit, the court must determine " 'whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case.' " (*Id.* at p. 1216.)

Regarding the "financial burden of private enforcement" (§ 1021.5), Bogan contends that Campbell failed to establish that he actually had to pay any attorney's fees, or that he otherwise incurred any liability for fees and costs in this action. However, "[s]ection 1021.5 does not specifically require a plaintiff to bear his own fees. It simply speaks of the 'financial burden of private enforcement.' [Citation.]" (*Otto v. Los Angeles Unified School Dist.* (2003) 106 Cal.App.4th 328, 333.) Attorney's fees may be awarded "even if the attorney has performed services pro bono . . . and regardless of whether the plaintiff is represented by private or nonprofit counsel. [Citation.]" (*Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 873; see *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 683.)

Bogan cites *Torres v. City of Montebello* (2015) 234 Cal.App.4th 382 (*Torres*), for the proposition that a litigant must bear a financial burden in order to receive an award of

section 1021.5 fees. In *Torres*, the plaintiff obtained a court determination that the city's exclusive waste hauling contract with the company Athens was void. (*Torres*, *supra*, at pp. 388-389.) The trial court nevertheless determined that the plaintiff was not entitled to section 1021.5 fees because his attorney's fees "had been paid entirely by an organization of Athens's waste hauling competitors" and thus the plaintiff "bore no financial burden in litigating the case." (*Id.* at p. 389.)

In particular, the trial court found that the plaintiff's attorney had told the plaintiff that " 'he needed to go to [the organization of Athens's trash hauling competitors],' and once he obtained an agreement from the [organization] to pay the attorney fees, '[t]hey "took over" ' and '[t]hey paid for all of it.' " (*Torres*, *supra*, 234 Cal.App.4th at pp. 405-406.) Under the circumstances, the trial court found that the plaintiff was " 'not a [litigant] who wished to pursue a lawsuit, found an attorney, and then also found a collateral source of funding for his attorneys' fees.' On the contrary, the [trial] court found, 'this lawsuit would not have been filed without [the organization's] agreement to pay [the plaintiff's] attorneys' fees.' " (*Id.* at p. 406.)

The appellate court determined that the trial court did not abuse its discretion in denying attorney's fees to the plaintiff. (*Torres*, *supra*, 234 Cal.App.4th at pp. 389, 408.) The appellate court explained that Athens's competitors who were part of the organization could have brought their own suit challenging the contract. "Had these competitors succeeded in establishing that their actual costs of litigation transcended their expected monetary benefit, they would have been entitled to attorney fees under Code of Civil Procedure section 1021.5. But these same competitors cannot obscure their financial interest in the litigation by choosing to fund [the plaintiff], who bore no 'financial burden' in bringing this case (Code Civ. Proc., § 1021.5), then claim, in [the plaintiff's] name, a right to reimbursement for their attorney fees under the private attorney general statute. [Citation.]" (*Torres*, *supra*, at p. 408.)

19

In this case, there is no evidence that Campbell was involved in the litigation based on a third party's agreement to pay his attorney's fees. Rather, Campbell was named in Bogan's mandate petition as a real party in interest. After being named, Campbell and other proponents of the initiative retained counsel to assist in the litigation, according to a declaration Campbell filed in the trial court. Campbell's counsel filed a declaration in the trial court detailing the attorney's fees and expenses incurred in defending the initiative. Under the circumstances, there was a "financial burden of private enforcement" within the meaning of section 1021.5 with respect to Campbell's defense of the initiative.

Regarding the purported "offsetting financial benefits" to Campbell (*Whitley*, *supra*, 50 Cal.4th at p. 1215), Bogan contends that Campbell's motive in defending the initiative was to benefit his own personal interests rather than the interests of the public. Bogan does not, however, cite any evidence in the record reflecting a financial benefit that the litigation yielded or reasonably could have expected to yield to Campbell. (*Ibid.*) Bogan asserts, without proper evidentiary support, that Campbell was a member of political organization called "Keep Fort Ord Wild." Bogan does not explain how the litigation could have yielded financial benefits to Campbell in view of this purported political membership.

Bogan also points to Campbell's references in the trial court to the free speech rights of the initiative proponents and to the initiative being Campbell's initiative. From this, Bogan asserts that Campbell defended this action to protect his own rights rather than the interests of the public. However, "section 1021.5 focuses not on plaintiffs' abstract personal stake, but on the *financial* incentives and burdens related to bringing suit." (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321, fn. 11, italics added; see *ibid.* ["That plaintiffs' personal interests in the outcome of the oil profits initiative were sufficient to induce them to bring this action is irrelevant"]; *Washburn v. City of Berkeley* (1987) 195 Cal.App.3d 578, 585 (*Washburn*).) Assuming Campbell had these general

20

interests concerning free speech rights and the subject matter of the initiative, "a litigant's personal nonpecuniary motives may not be used to disqualify that litigant from obtaining fees under Code of Civil Procedure section 1021.5." (*Whitley*, *supra*, 50 Cal.4th at p. 1211.) In sum, "where the decision results in a substantial benefit to the public, and where the [party seeking fees has] no pecuniary interest in the outcome of the litigation, as in this case, the financial burden is such that a fee award is proper. [Citation.]" (*Washburn*, *supra*, at pp. 585-586.)

Fifth, Bogan appears to alternatively assert that Campbell did not have a direct interest in the litigation. From this implicit contention, Bogan argues that Campbell's "lead role" in the litigation was an insufficient basis to award fees. (See *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1181 (*Connerly*) [active participation in litigation, without a direct interest in the litigation, is an insufficient basis to award section 1021.5 fees, and thus such fees may not be awarded against amicus curiae who "acted in many respects as lead counsel"].) Bogan's mandate petition challenged an initiative petition, of which Campbell was one of the official proponents, and Bogan named Campbell as one of the real parties in interest. "[A] real party in interest in a mandamus proceeding . . . is regarded as a party to the litigation." (*Mejia*, *supra*, 156 Cal.App.4th at p. 160.) Further, a real party in interest " 'has been generally defined as "any person or entity whose interest will be directly affected by the proceeding . . . ." ' " (*Connerly*, *supra*, at p. 1178.) Bogan fails to provide a reasoned argument or cite authority to support a conclusion that Campbell did not have a sufficient interest in the litigation for purposes of a section 1021.5 fee award.

Sixth, Bogan contends that section 1021.5 fees have been awarded to successful defendants only in certain situations, and that a fee award in this case is unjust (see *Serrano v. Unruh* (1982) 32 Cal.3d 621, 639). He argues that the limited situations in which successful defendants have been awarded fees do not encompass this case, in which he "sought to benefit the public, and specifically the voters of Monterey County,"

with his mandate petition "by ensuring that they would have sufficient and accurate information about [the] proposed amendments to the Fort Ord 'Reuse Plan' when they reviewed [the] proposed ballot initiative."

We observe that, on the merits of Bogan's mandate petition, the trial court *rejected* the contention that Campbell's initiative petition contained insufficient or inaccurate information.  Further, "courts do not balance the relative benefits conferred by the opposing parties' positions; they ask only whether the successful party's action has conferred a significant benefit on the general public or a large class of persons.  [Citation.]" (*Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 232.)

Moreover, regarding Bogan's *motivation* in bringing the mandate petition, good faith is not a defense to an award of attorney's fees under section 1021.5, and bad faith is not a requirement in order for such fees to be awarded against a party.  (*Mejia*, *supra*, 156 Cal.App.4th at pp. 161, 162; *Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213, 231-232 (*Citizens Against Rent Control*).)  The California Supreme Court has explained that "the party against whom such fees are awarded must have done or failed to do something, in good faith or not, that compromised public rights." (*Joshua S.*, *supra*, 42 Cal.4th at p. 958.)  " '[G]enerally speaking, the opposing party liable for attorney fees under section 1021.5 has been the defendant person or agency sued, which is responsible for initiating and maintaining actions or policies that are deemed harmful to the public interest and that gave rise to the litigation.' " (*Joshua S.*, *supra*, at p. 956, italics omitted, quoting *Connerly, supra,* 37 Cal.4th at pp. 1176-1177.)

The California Supreme Court cautioned, however, that "[t]his is not to say that a party cannot be held liable for section 1021.5 attorney fees for *engaging* in litigation. When a party *initiates* litigation that is determined to be detrimental to the public interest, attorney fees have been imposed." (*Joshua S.*, *supra*, 42 Cal.4th at p. 957, italics added.)  As an example, the California Supreme Court cited *Wal-Mart*, explaining that "Wal-Mart

22

attacked on technical grounds a referendum that was to decide whether it could locate within the city . . . . Wal-Mart thus sought a judgment that would adversely affect the public interest by preventing the city's electorate from exercising its power of referendum." (*Ibid.*, italics omitted.)  Similarly, as we have explained, Bogan challenged Campbell's initiative petition and sought a judgment to prevent the county's electorate from exercising its power of initiative.

We are also not persuaded by Bogan's argument that an award of section 1021.5 fees against him is precluded because it will purportedly have a " 'chilling effect' on the public and limit future public interest lawsuits."  "The purpose and primary effect of Code of Civil Procedure section 1021.5 is to encourage litigation that enforces important public policies . . . .  The purpose of an award of fees against an unsuccessful opposing party is not to penalize petitioning activity by that party, but to encourage litigation by the successful party by making the litigation financially feasible." (*Mejia*, *supra*, 156 Cal.App.4th at p. 163.)  Where the statutory criteria and the legislative intent of the statute are satisfied, an attorney's fee award under section 1021.5 is proper.  (See *Joshua S.*, *supra*, 42 Cal.4th at p. 958.)  Bogan fails to cite legal authority supporting the proposition that a concern about the "chilling effect" of a fee award may form a basis for denying a section 1021.5 fee award.  As one appellate court has stated, "It is the Legislature's business—not ours—to rewrite the statutory criteria." (*Citizens Against Rent Control*, *supra*, 181 Cal.App.3d at p. 232, fn. omitted.)

## IV.  DISPOSITION

The May 2, 2014 order awarding attorney's fees and costs is affirmed.

23

_____
BAMATTRE-MANOUKIAN, ACTING P. J.

WE CONCUR:

_____
MIHARA, J.

_____
GROVER, J.

*Bogan v. Houlemard*
**H041246**